In re Joann **HARMON, Debtor.**

In re Matthew C. Eison and
Dawn J. Eison, **Debtors.**

Nos. 09–84515–MGD, 09–41826–MGD.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 3, 2010.

Soo J. Hong, Robert J. Semrad & Associates, LLC, Atlanta, GA, for Debtor.

## ORDER IMPOSING SANCTIONS

MARY GRACE DIEHL, Bankruptcy Judge.

These two cases are before the Court on Orders to Show Cause. Joann Harmon's case came before the Court on an Order to Show Cause directed to Joann Harmon, Soo J. Hong, Jennifer A. Jakob–Barnes, and Craig Z. Black as filing attorneys for Robert J. Semrad & Associates, LLC ("Semrad"). (*Harmon,* Docket No. 17). That matter came on for hearing on February 25, 2010. Present at the hearing were Joann Harmon, Soo J. Hong and Craig Z. Black, current attorneys at Semrad, Jennifer A. Jakob–Barnes, a former attorney at Semrad, Frank G. Nason, counsel for Semrad and counsel for Soo J. Hong, Craig Z. Black, and Jennifer A. Jakob–Jones individually, Martin Ochs, counsel for the U.S. Trustee, and Edward K. Safir, counsel for the Chapter 13 Trustee. The Court took evidence and heard the arguments of counsel. Based on the parties' representations at the hearing, the Court has serious concerns regarding the actions taken by attorneys in Ms. Harmon's case and the routine practices of the Semrad law firm.

The Court's concerns are exacerbated by the recent improper conduct by Semrad and the results of the U.S. Trustee's investigation in another case before this Court. (*In re Eison,* Docket No. 54). Matthew and Dawn Eison's case came before the Court on an Order to Show Cause directed to G. Scott Buff, as counsel for the debtors. (*Eison,* Docket No. 21). That matter came on for hearing on September 30, 2009. Present at the hearing were G. Scott Buff, Frank G. Nason, as counsel for

Semrad, Martin Ochs, counsel for the U.S. Trustee, and Edward K. Safir, counsel for the Chapter 13 Trustee. Given the similarities between the behaviors at issue in each case, the Court here consolidates its Show Cause Orders in the *Eison* and *Harmon* cases.

## I. FACTS

To fully understand debtors' interactions with the Semrad law firm, it is necessary to understand the structure of the office. Accordingly, the Court will first outline the structure of the Semrad law firm's Atlanta office, then outline the facts of the *Harmon* and *Eison* cases. Finally, the Court will address the results of the U.S. Trustee's investigation, as filed in the *Eison* case.

### A. Semrad in Atlanta

Semrad is a Chicago-based law firm with an office in Atlanta. Attorneys at the Semrad firm appear to be divided into two groups based on seniority. More junior attorneys prepare petitions. More senior attorneys are "court attorneys" or "intake attorneys" who conduct initial interviews to determine whether a client would benefit from a bankruptcy filing and appear at court hearings. Both attorney groups receive base-line salaries with bonuses based on the number of petitions they file. The annual base salary is $40,000 for junior associates and $50,000 for court attorneys. Each group receives monthly bonuses of $25 per case filed, but a court attorney's bonuses are dependent on whether that attorney filed a minimum of 25 petitions that month. Thus, if a court attorney files 24 petitions in a month, she receives no

bonus. If a court attorney files 25 petitions in a month, she receives a bonus of $625 for that month.

Semrad's Atlanta office has sixteen attorneys. The managing partner for Semrad's Atlanta location is Craig Z. Black. Mr. Black oversees the day-to-day operations of the Atlanta office and assists attorneys with court appearances. Mr. Black has been practicing law in Illinois since 2002 and was admitted to the Georgia bar in 2008. No attorney in the Atlanta office has been practicing law longer than Mr. Black. Mr. Black filed a notice of appearance in the *Harmon* case. (*Harmon*, Docket No. 15). Mr. Buff, who appeared in the *Eison* case, used to be a managing partner at Semrad, but is no longer associated with the firm.

Two other Semrad attorneys filed documents in the *Harmon* case: Ms. Hong and Ms. Jakob–Barnes. Ms. Hong was the junior attorney working on Ms. Harmon's case. Ms. Hong was admitted to the Georgia bar in 2008 and has been working at Semrad since April of 2009. Prior to working at Semrad, Ms. Hong's bankruptcy experience was limited to a debtor-creditor relations course in law school. Ms. Hong's legal practice before working at Semrad was limited to contract work on worker's compensation claims. Ms. Hong's bankruptcy training at Semrad consisted of sitting with two senior attorneys, Brien Nelson and Harold Boone, when she first started the job.[1] Ms. Jakob–Barnes was a court attorney involved in the *Harmon* case. Ms. Jakob–Barnes was admitted to the Georgia bar in October of 2007 and was employed at Semrad for May through December of 2009.

---

1. The Court notes that a review of the Georgia Bar Association's website indicates that Brien Nelson and Harold Boone were both admitted to the Georgia bar in December of 2008. Therefore the "senior attorneys" Ms. Hong "sat with" for training cannot have had more than five months of experience as bankruptcy attorneys prior to Ms. Hong's employment at Semrad in April of 2009.

## B. The *Harmon* Case

This case initially came to the Court's attention when Ms. Harmon filed a letter stating that she never authorized the filing of her case. (*Harmon*, Docket No. 16). A voluntary Chapter 13 petition was filed on Ms. Harmon's behalf on September 18, 2009, which included her electronic signature, declaring under penalty of perjury the veracity of the petition. All schedules, the statement of financial affairs, Ms. Harmon's pay advices, Disclosure of Compensation, and statement of current monthly income were also filed on September 18, 2009. Additionally, a Notice of Consumer Debtor under § 342(b), Verification of Creditor Matrix, Declaration Concerning Debtor's Schedules, and a Chapter 13 Plan were filed with Ms. Harmon's electronic signature. The case was dismissed on October 14, 2009, following a Voluntary Motion to Dismiss filed on Ms. Harmon's behalf. (*Harmon*, Docket No. 12). On January 27, 2010, Ms. Harmon filed a letter with the Court alleging that the above-styled Chapter 13 case was filed without her authorization or consent. (*Harmon*, Docket No. 16). As a result of the Court's grave concern regarding the filing of a petition and other pleadings without the client's authorized written consent, the Court directed Ms. Harmon and each of the filing attorneys to appear at a show cause hearing on February 25, 2010. The following facts were found at that hearing.

Ms. Harmon came to Semrad's offices on September 9, 2009, for what she believed would be a consultation. She initially met with an intake attorney, Brien Nelson, whose job was to evaluate whether Ms. Harmon's situation was appropriate for a bankruptcy filing and under what chapter to file.[2] After meeting with Mr.

Nelson, Ms. Harmon spent two hours with Ms. Hong, who prepared Ms. Harmon's petition and discussed her initial payment to Semrad. Ms. Hong and Ms. Harmon determined that she would pay Semrad the initial filing fee in two installments. She paid half the fee via a check dated September 9, 2009, and half the fee via a check post-dated to September 18, 2009. Ms. Hong explained to Ms. Harmon that they would gather information and prepare her petition in the intervening days, so that the petition could be filed when her check was cashed. Ms. Harmon understood that the case would not be filed until she gave "the final say-so."

During their initial interview, Ms. Hong pulled Ms. Harmon's credit report and prepared the schedules and statement of affairs for her petition. Ms. Hong had Ms. Harmon review and sign each document, page by page, including Ms. Harmon's declaration under penalty of perjury attesting to the veracity of the documents. Ms. Harmon also signed a "Contract for Legal Services for Representation in a Chapter 13 Bankruptcy." (Exhibit 6 from the Show Cause Hearing). Attached to that document is a list of "Chapter 13 Disclaimers" and Ms. Harmon initialed under each disclaimer. One such disclaimer states "I agree that I authorized Robert J. Semrad and Associates to file my bankruptcy case, after I reviewed my bankruptcy petition and schedules." Ms. Harmon explained that she signed all the forms in advance because her work schedule made it difficult for her to visit the law office during the day. On the day of the initial meeting, however, she did not have all the information necessary for her petition and Ms. Hong warned Ms. Harmon that her petition would change as she submitted all the

---

**2.** Mr. Nelson's name does not appear on the docket in Ms. Harmon's case, so he was not summoned to the Show Cause hearing. Ms.

Hong testified that Mr. Nelson was no longer employed with Semrad at the time of the hearing.

necessary documents. On September 11, 2009, Ms. Hong called Ms. Harmon and left a voicemail identifying the documents she still needed to submit. On the same date, Ms. Harmon emailed pay stubs and tax returns to Ms. Hong. Those documents led Ms. Hong to change the numbers on Ms. Harmon's Schedule I.

Ms. Hong contacted Ms. Harmon again on September 17, 2009, and explained that the only remaining documents she needed were her credit counseling certificate and an affidavit regarding her roommate's contribution. Ms. Hong told Ms. Harmon that, if the credit counseling was completed on that day, the earliest Ms. Hong could file the petition would be September 18, 2009, which was the date on her postdated check. Ms. Harmon emailed the credit counseling certificate to Ms. Hong on September 17, 2009.

On September 18, 2009, Ms. Hong filed Ms. Harmon's petition. Despite the various changes to the petition between September 9 and September 18, Ms. Hong testified that she did not have Ms. Harmon sign a new declaration verifying the accuracy of the documents. For instance, Ms. Hong filed the changed Schedule I with the petition and the original declaration signed by Ms. Harmon. Accordingly, the document signed and initialed by Ms. Harmon ("Exhibit 1" at the Show Cause Hearing) was not the same document filed with the Court. Ms. Harmon had not personally reviewed or verified the information on the filed document, despite the attached declaration to the contrary. Similarly, Ms. Hong filed the plan with an electronic indication of Ms. Harmon's signature, but Ms. Harmon never signed the original copy of the plan that was filed with the Court.

At some time on September 18, 2009, after the petition was filed, Ms. Harmon and Ms. Hong spoke on the phone. The parties appear to disagree regarding who called first and when Ms. Harmon learned that the petition had been filed. According to Ms. Hong, she called Ms. Harmon for the purpose of giving her the new case number. According to Ms. Harmon, she contacted Ms. Hong to report another creditor for her schedules and Ms. Hong told her the case had already been filed only after Ms. Harmon said she no longer wanted to proceed with the case. What is clear is that Ms. Harmon and Ms. Hong spoke by phone on that day, but not until after the case had been filed. In that phone call, Ms. Harmon informed Ms. Hong that she had a creditor she wanted to add to her case. Ms. Hong explained that the case included a 100% plan, so that any addition of creditors would increase the plan payment. Ms. Harmon then emailed the creditor's information to Ms. Hong, who called Ms. Harmon back and told her the amended plan payment. When Ms. Hong told Ms. Harmon what her payment would be, Ms. Harmon stated that the payment would be too high and that she did not want to go through with the filing. She states that this was the first time she was given a proposed plan payment and that she would not agree to the filing of a case if she did not know what the payments would be. Ms. Hong told Ms. Harmon that she would look into dismissing the case. Ms. Hong had no further contact with Ms. Harmon.

Around the first week of October 2009, Ms. Harmon met with Mr. Black to discuss the handling of her case. She told Mr. Black that she did not authorize the filing of her case. Mr. Black reviewed the file and saw her signed documents. Among those documents was a signed plan showing no plan payment. When he reviewed the file, Mr. Black was aware that the signed Schedule I in Ms. Harmon's file did not match the Schedule I filed with the Court. Mr. Black spoke with Ms. Hong

about that issue and she informed Mr. Black that Ms. Harmon "gave her the go ahead with respect to what was filed." Mr. Black tried to come up with a plan that would work for Ms. Harmon and showed her the new schedules, but he did not take or propose any steps to correct the improper filing with the Court. Ms. Harmon did not want to go forward with the proposed plan and demanded a refund because she did not authorize the filing of her case. Mr. Black initially refused the refund, but ultimately agreed when she continued calling and writing the office. Mr. Black had no further contact with Ms. Harmon.

Ms. Jakob–Barnes became involved with the case when Mr. Nelson brought it to her attention. He told Ms. Jakob–Barnes that Ms. Harmon had not wanted her case to be filed and that it had been filed. Ms. Jakob–Barnes spoke with Ms. Harmon about dismissing her case and faxed her the dismissal form. Ms. Harmon agreed to dismiss her case, signed the form and mailed the original to Ms. Jakob–Barnes. Ms. Jakob–Barnes filed the dismissal form on October 13, 2009. (*Harmon*, Docket No. 11).

Ms. Harmon's case was voluntarily dismissed on October 14, 2009. (*Harmon*, Docket No. 12). She filed her letter to the Court approximately three months later on January 27, 2010. Upon receipt of the letter, the Court issued its Show Cause Order, which directed the parties to appear and show cause why sanctions should not be imposed. (*Harmon*, Docket No. 17).

### C. The *Eison* Case

This case came to the Court's attention following the Chapter 13 Trustee's Motion for Order to Show Cause Why Sanctions Should Not Be Imposed. (*Eison*, Docket No. 16). That matter came on for hearing

on July 22, 2009. At that hearing, attorney G. Scott Buff appeared on behalf of debtors Matthew and Dawn Eison. Mr. Buff was at that time a supervising attorney at Semrad's Atlanta office. Mr. Buff explained that Mr. Eison had come to the Semrad offices, without his wife, and prepared a skeletal petition. Mr. Eison initialed but did not sign the petition documents and left the office before deciding whether to file his case. Mr. Eison then called the office and reported that he spoke with his wife and wanted to file the petition. An attorney other than Mr. Buff then filed the petition in the names of both Mr. Eison and Mrs. Eison without obtaining their signatures. Further, the attorney filed the petition electronically using Mr. Buff's CM/ECF password when Mr. Buff had never reviewed the documents.

The Court entered an Order to Show Cause and held a further hearing on the matter on September 30, 2009. At that hearing, Mr. Nason appeared as counsel for Semrad and reported that Mr. Buff was no longer employed at the firm. Further, Mr. Nason reported that the *Eison* case was an isolated incident and not evidence of the firm's routine practice. Mr. Ochs, counsel for the U.S. Trustee, represented that he would conduct an investigation into Semrad's operations and that he would file a report documenting his results.

### D. Investigation of the U.S. Trustee

At the hearings, Semrad sought to characterize the *Harmon* and *Eison* cases as unique. The results of the U.S. Trustee's investigations, however, suggest otherwise. According to his report, Mr. Ochs conducted his investigation of Semrad's practices in two stages. (*Eison*, Docket No. 54, ¶¶ 8, 16). First, as a result of the Show Cause Hearing in the *Eison* case, Mr. Ochs reviewed the Semrad files to confirm

that Semrad's clients were actually signing their petitions and related documents. (*Eison*, Docket No. 54, ¶ 8). Mr. Ochs reviewed a random sample of 200 cases, which represented approximately ten percent of the cases filed by Semrad's Atlanta office over a one-year period. *Id.* Based upon that initial review, Mr. Ochs determined that Semrad's clients were reviewing and signing petitions and pleadings prior to their filings. (*Eison*, Docket No. 54, ¶ 12).

Following the Show Cause Hearing in the *Harmon* case, which highlighted different possible practice problems, Mr. Ochs expanded the scope of his investigation to compare signed documents with documents that had been electronically filed with the court. (*Eison*, Docket No. 54, ¶ 16). In this stage of his investigation, Mr. Ochs reviewed twenty-two case files. *Id.* Mr. Ochs determined that there were differences between the signed documents and the electronically filed documents in all but three of those cases. (*Eison*, Docket No. 54, ¶ 19).

The differences Mr. Ochs identified between the signed documents in Semrad's case files and the documents electronically filed with the Court ranged from the correction of typographical errors to changes in plan payments. *Id.* Specifically, Mr. Ochs found discrepancies including changes to: (1) property valuation, (2) claims valuation, (3) the security status of creditors' claims, (4) the list of creditors, (5) the statement of financial affairs, (6) the means test form, and (7) the terms of the proposed Chapter 13 plan. *Id.* Mr. Ochs also found "that in almost every case, the Semrad firm modified the date the debtors signed the petitions." *Id.* Finally, Mr. Ochs reported that in three of the twenty-two cases, the debtors appeared to have signed uncompleted Chapter 13 Plans

"with zeroes," with the actual terms of the plan completed after the signing.

## II. *SANCTIONS*

■■■■ The Bankruptcy Court has two sources of authority for imposing sanctions for improper filings: Federal Rule of Bankruptcy Procedure 9011 and the Court's inherent power to control the proceedings and the conduct of parties before it. *In re Mroz*, 65 F.3d 1567, 1574–1576 (11th Cir.1995). The Court can impose sanctions both against individual attorneys and against law firms. Fed. R. Bankr.P. 9011(c); *and In re Mroz*, 65 F.3d. at 1576. For the imposition of sanctions under the Court's inherent power, the affected party must have notice that his actions may warrant sanctions, the Court must give the party the opportunity to respond, and the Court must make a finding of bad faith. *Id.* at 1575–1576. While Rule 9011 has similar procedure requirements, a finding of bad faith is not necessary for the imposition of sanctions pursuant to Rule 9011. *In re Rivera*, 342 B.R. 435, 460 (Bankr. N.J.2006); *and In re Robinson*, 198 B.R. 1017, 1024 (Bankr.N.D.Ga.1996). In each of the cases here, the Court issued an Order to Show Cause that notified the Semrad law firm and the lawyers individually what actions concerned the Court. The Order further provided an opportunity for the parties to appear and justify their actions. In light of the Local Bankruptcy Rules and based on the parties' testimony, the Court finds that Ms. Hong and Mr. Black acted in bad faith and that their actions should be imputed to the Semrad law firm. Ms. Hong, and through her the Semrad law firm, also violated Rule 9011. Finally, it appears that attorneys at the Semrad law firm have frequently violated the "Rights and Responsibilities Statement Between Chapter 13 Debtors and Their Attorneys," which is incorporated into the Court's General Order 6–2006.

This Court's Local Rules address the implication of filing documents with electronic signatures. Bankr. Local Rule 5005–7. When a document is filed electronically, parties can indicate that the document is signed with the notation "/s/" on the signature line above a party's name. Bankr. Local Rule 5005–7(b). When an attorney files a document electronically and includes the attorney's electronic signature, that constitutes a signature for the purposes of Rule 9011. Bankr. Local Rule 5005–7(b)(1). Whenever an electronically filed document includes a party's electronic signature, that party's signature "shall be affixed to the original before the document is created in image format." Bankr. Local Rule 5005–7(b)(1)–(3). Thus, whenever an attorney electronically files a document and uses "/s/" to indicate that a party signed that document, the attorney is representing to the Court that a non-electronic original document exists and that the party has signed the original prior to the creation of the electronic copy.

Ms. Hong's practice of obtaining a debtor's signatures on documents, then changing the substance of the documents, failing to get the debtor's signature on the changed form, and ultimately filing the changed documents with an electronic indication of the debtor's signature is a violation of Local Rule 5005–7(b)(3). Those actions are particularly egregious when, as here, the documents are filed along with a declaration, signed by the debtor, that allegedly verifies the veracity of the attached documents. As Local Rule 5005–7(b)(1) indicates that Ms. Hong's electronic signature constitutes a signature for purposes of Bankruptcy Rule 9011, Ms. Hong's practice is also a violation of Rule 9011. The Court finds Ms. Hong's violation of these rules to be bad faith because Ms. Hong falsely represented to this Court that Debtor signed the filed documents.

Mr. Black's actions, and inaction, were in bad faith. As an officer of the Court, Mr. Black has a duty to ensure that documents filed before this Court on behalf of his clients are accurate and not misleading. Mr. Black knew that Ms. Hong had filed documents with electronic signatures when the matching original documents were unsigned. Despite that knowledge, Mr. Black took no action to correct the filing and properly inform the Court. When addressing the issue with Debtor, Mr. Black attempted to amend her proposed plan but never suggested correcting the filing with the Court.

Local Rule 5005–5(c) states that the use of an attorney's password to file documents electronically "certifies that such attorney and the attorney's law firm have authorized the filing." Ms. Hong's electronic filing therefore indicates that the Semrad law firm authorized that filing. Mr. Black's actions, as the local managing partner of Semrad, further indicate that Semrad authorized the filing. For these reasons, it is proper to impute Ms. Hong's actions to the Semrad law firm. Semrad, therefore, is liable for violations of Local Rule 5005–7 and Bankruptcy Rule 9011.

The U.S. Trustee's report confirms that Ms. Hong's practice of filing changed documents without getting new signatures is a widespread practice at the Semrad office. In addition to being a violation of the Local Rules, this practice is a violation of the Debtor's Rights and Responsibilities Statement as incorporated in General Order 6–2006. The Rights and Responsibilities Statement identifies specific actions that counsel of Chapter 13 debtors "shall" take prior to filing a case. One responsibility of debtor's counsel is to "personally review with Debtor and *obtain Debtor's signature* on the *completed* petition, plan, as well as the Statement of

Financial Affairs, Income and Expenses, and other statements as well as the various schedules (the "Schedules"), and all amendments thereto, whether filed with the petition or later" (emphasis added). The Semrad practice of obtaining debtors' signatures on blank or incomplete forms, without later obtaining a signature on the completed forms prior to filing, is therefore a violation of General Order 6–2006. It is also a generally bad practice to have clients signing forms in blank.

### III. *CONCLUSION*

 "Sanctions may be imposed for the purpose of deterrence, compensation and punishment." *In re Addon Corp.,* 231 B.R. 385, 391 (Bankr.N.D.Ga.1999). The Court first considers whether any compensation is due to the debtors. Ms. Harmon has been refunded the full fee she paid to Semrad, but she still has an improperly filed bankruptcy case in her name. Ms. Hong's practices have made it considerably more difficult for the Court to determine whether Ms. Hong reasonably believed that Ms. Harmon authorized the filing of her petition. It is clear, however, that Ms. Harmon does not believe that she authorized the filing of this case and that Semrad has failed to produce conclusive evidence that she did authorize the filing. The language of the disclaimer Ms. Harmon initialed supports Ms. Harmon's view, that she would not have authorized the filing of the case until "after [she] reviewed [her] bankruptcy petition and schedules." Ms. Harmon never received copies of the completed petition and schedules prior to the filing of the case. It therefore appears that Ms. Harmon did not authorize the filing of her case. Without proper authorization from the debtor, a bankruptcy case is void *ab initio. In re Glover,* 2009 WL 6498524, 2009 Bankr.LEXIS 1111 (Bankr.N.D.Ga.2009); *see also In re Buppelmann,* 269 B.R. 341,

343 (Bankr.M.D.Pa.2001). The Court now finds that Ms. Harmon's case was fraudulently filed without her express authorization and that the case was void *ab initio.* The Court does not need to take further action to compensate Ms. Harmon. Mr. Eison and Mrs. Eison's case was successfully completed and the debtors received their Chapter 7 discharge on March 10, 2010. The Court does not need to take further action to compensate Mr. Eison and Mrs. Eison.

 Given the importance of the Court's ability to rely on attorneys' representations, deterrence and punishment are both appropriate purposes for sanctions here. Rule 9011 allows the Court to fashion an "appropriate sanction" to address violations. Fed. R. Bankr.Pro. 9011. The specific sanction imposed is up to the Court's sound exercise of discretion. *See In re Addon Corp.,* 231 B.R. at 390 (relying on *Donaldson v. Clark,* 819 F.2d 1551, 1557 (11th Cir.1987)). In the present case, the Court seeks assurances that the practices at Semrad will be adjusted to prevent future confusion between the firm and clients regarding when and whether to file petitions as well as to prevent the filing of false and misleading documents. Both of these goals can be addressed by sanctions that deter the repetition of the attorneys' actions in these cases. The widespread nature of those actions within the Semrad firm, however, calls for more punitive sanctions. As this Court relies heavily on electronic filings, the adherence of attorneys to the local rules regarding electronic signatures is imperative.

 Accordingly, it is

**ORDERED** that Craig Z. Black, as managing partner of the Atlanta office of Robert J. Semrad & Associates, LLC, shall:

(1) meet, within thirty (30) days of this Order, with members of the ad hoc committee of consumer bankruptcy attorneys in this district organized by Mary Ida Townson, Chapter 13 Trustee, to inform himself and the Semrad law firm with respect to successful methods of managing consumer bankruptcy caseloads; and

(2) file with the Court, within sixty (60) days of this Order and on the docket in both of the above-styled cases, an "Action Plan" that addresses the concerns expressed in this Order and that is targeted at providing quality legal representation to consumer debtor clients. This action plan may include additional legal education, the setting of limits on caseloads, and the elimination of the firm's quota-based bonus system.

**IT IS FURTHER ORDERED** that Robert J. Semrad & Associates, LLC, shall:

(1) file a signed declaration, with each document filed in this Court for six (6) months from the date of this order and in every case in which they represent a party in interest, to attest to the firm's compliance with General Order 6–2006; and

(2) pay a fine of $5,000.00 into the registry of the Court within thirty (30) days of the entry of this Order; Semrad shall notify the Court when the payment has been made by filing a certification with the Court on the docket in both of the above-styled cases.

**IT IS FURTHER ORDERED** that Craig Z. Black and Soo J. Hong shall each attend five (5) credit hours of Continuing Legal Education in ethics and professionalism within five (5) months from the date of this Order and file a certification with the Court, on the docket in both of the above-styled cases, with respect thereto.

The Clerk is directed to serve a copy of this Order upon the parties on the attached distribution list.

The Clerk is further directed to pay the $5,000.00 received from Semrad & Associates pursuant to this Order to ConsumerBankruptcyCounseling.Info, a non-profit that provides free pre-petition credit counseling to debtors.

**IT IS ORDERED.**